UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES,                               **MEMORANDUM AND ORDER**

 - against -                                  2:20-cr-48 (DRH) (ARL)

CURTIS PRUSSICK,

                        Defendant.
----------------------------------------------------------------X

**APPEARANCES**

**BREON PEACE**
**UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, NY 11722
By:   Michael R. Maffei, Esq.

**KEAHON, FLEISCHER & FERRANTE**
Attorneys for Defendant
1393 Veterans Memorial Highway, Suite 312 North
Hauppauge, NY 11788
By:   Joseph Ferrante, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Defendant Curtis Prussick ("Prussick") made a pretrial motion on March 19, 2021 seeking relief on a number of grounds. After the motion was fully submitted on June 8, 2021, the Court granted the parties' request to hold its decision in abeyance pending plea negotiations. On September 3, 2021, when ongoing plea negotiations proved unproductive, the Court placed the motion back on its docket. This written decision follows the Court's bench decision issued on October 8, 2021, which denied

portions of Prussick's application and reserved decision on the rest. For the reasons stated below, the outstanding requests in Prussick's application are denied.

## BACKGROUND

The factual summary below draws from Indictment, the State Felony Complaint, and the affidavits submitted in the parties' motion papers. [DEs 1, 59-1, 59-3 to -5]. The Court directs the reader to its October 8, 2021 bench decision transcript for a full recitation of facts.

On January 11, 2020, Detective Patrick McDermott ("McDermott") learned from his law enforcement partners that occupants of a Chevy Cruze with license plate HLD9348 were reportedly dealing drugs in a Rocky Point, New York McDonalds parking lot. Individuals would pull up alongside the Cruze, leave their car, enter Cruze's backseat, engage in a hand-to-hand transaction with individuals in the Cruze's front seat, return to their car and drive away. The entire interaction would occur in a few minutes at most. McDermott performed a background check into the Cruze's registration and discovered that Amber Schatz ("Schatz") was the registered owner. McDermott knew of Schatz from his history with the Suffolk County District Attorney's Office's East End Drug Taskforce ("EEDTF"); he specifically knew Schatz associated with Prussick. Five years prior, McDermott had observed the two selling narcotics in a similar manner.

On January 14, 2020, McDermott surveilled Prussick and Schatz in the Cruze in the Rocky Point McDonalds parking lot. Shortly after they arrived, a Dodge pickup truck entered the lot and parked adjacent to the Cruze. Prussick exited the Cruze's

driver seat and the pickup truck driver entered its backseat. The front-seat passenger engaged in a hand-to-hand exchange with the pickup driver, who promptly exited the Cruze and drove away. Prussick then re-entered the Cruze.

A few minutes later, a black Mercedes arrived and parked adjacent to the Cruze. McDermott activated his video camera and recorded the encounter. As before, Prussick left the Cruze, the Mercedes driver entered its back seat, the front-seat passenger conducted a hand-to-hand transaction, and the Mercedes driver left – all of which took place within a minute. Prussick re-entered the Cruze once the Mercedes driver left.

On January 23, 2021, McDermott and EEDTF members observed Prussick leave a homesite at 42 Lewin Drive in Wading River, New York, enter the Cruze, and drive to a shopping center parking lot in Shoreham, New York. They then saw a white Jeep park near the Cruze. When the Jeep driver exited his vehicle and entered the Cruze's back seat, McDermott pulled up to a position in the parking lot from which he could observe the Cruze and its occupants. Seeing a hand-to-hand transaction between the front- and backseat passenger, McDermott decided to arrest Prussick and Schatz.

After the arrest, McDermott obtained a warrant to search 42 Lewin Drive, from which Prussick and Schatz departed earlier that day.[1] The search uncovered

---

[1] Prussick contends the Government lacked probable cause to obtain a search warrant for 42 Lewin Drive. Def. Mem. at 2–3, 5–6, 9; Def. Reply at 5–9. First, Prussick challenges the basis for the police's contention that 42 Lewin was his "known address." Def. Mem. at 2–3. Second, Prussick challenges the nexus between 42 Lewin and the drug dealing activity. Def. Mem. at 5–6, 9. To the extent this issue remains

unresolved after the Court's October 8, 2021 bench decision and October 20, 2021 status conference, the Court finds that the magistrate had a substantial basis to conclude probable cause sufficient to issue the search warrant existed.

"Probable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)). This Court need only "ensure that the magistrate had a "substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. at 238 (internal quotation marks and ellipses omitted).

McDermott's knowledge that 42 Lewin Drive was Prussick's "known address" is based on prior events that are detailed in Prussick's affidavits submitted in support of his pretrial motion. Lewin Drive is "a dead end block with only 9 houses on it." Affidavits of Curtis Prussick, Exs. C, D [DEs 59-3, 59-4] to Def. Mem. On November 30, 2019—roughly two months before Prussick's arrest—Schatz and Prussick "head[ed] to 42 Lewin Drive" and, after "turn[ing] onto the block of Lewin Drive," were threatened at knifepoint "on Lewin Drive." *Id.* Prussick and Schatz "stay[ed] on the scene," "called 911," "remained till the police arrived," and "made a police report." *Id.* Prussick avers that, after the incident, "Schatz [was] scared to be at 42 Lewin," in part because the perpetrator "knew . . . that we possibl[y] lived on Lewin Drive." *Id.*; *see* Def. Mem. at 11 ("[A]s can be seen in Prussick's affidavit in support of this motion, Schatz purchased the rifle after they had a scary confrontation with an intruder *near their home* on or about November 30, 2019." (emphasis added)). The Court also notes parenthetically that the February 18, 2020 bail hearing's recorded audio reflects Prussick audibly telling his attorney that he resides at "42 Lewin," [DE 14] (FTR Log #2:09:30–2:11:00, 2:17:00–2:18:00), which did not match the address he gave to Pretrial Services, *id.*; *see* [DE 15] at 3 of 3 ("false address used").

The nexus between 42 Lewin and the drug dealing activity is established by the circumstances leading up to Prussick's arrest. On the day of Prussick's arrest, the same day the magistrate issued the search warrant, McDermott and EEDTF observed Prussick drive the Cruze from 42 Lewin to the parking lot in Shoreham. Ex. A to Def. Mem. The "short time between" Prussick's departure from 42 Lewin and the transactions in the Shoreham parking lot "provides a 'reasonable inference' of a nexus between the drug [dealing activity] and his residence 'based on common sense.'" *See United States v. Muhammad*, 520 Fed. App'x 31, 38–39 (2d Cir. 2013) (quoting *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004)).

The totality of the circumstances presented to the magistrate therefore gave him a substantial basis to determine probable cause to search 42 Lewin existed. And even if it did not, "the warrant application was not 'so lacking in indicia of probable cause as to render reliance upon it unreasonable,'" *i.e.*, the officers who obtained the warrant acted "with objective good faith." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 920, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984) and *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.1992)). Either suffices to deny Prussick's motion to suppress.

narcotics, narcotics paraphernalia, narcotics processing material, an assault rifle, and cash.

On February 4, 2020, a grand jury indicted Prussick on three charges: conspiracy to distribute and possess with intent to distribute controlled substances, 21 U.S.C. §§ 841(b)(1)(B)(iii), (b)(1)(B)(vi), (b)(1)(C) (Count I); possession of controlled substances with the intent to distribute, 21 U.S.C. §§ 841(b)(1)(B)(iii), (b)(1)(B)(vi), (b)(1)(C) (Count II); and unlawful use of a firearm, 18 U.S.C. § 924(c)(1)(A)(i) (Count III).

On March 19, 2021, Prussick filed the instant motion. [DE 59]. The parties fully submitted briefing on June 8, 2021. [DE 69]. On June 16, 2021, the Court granted the parties' request to hold its decision in abeyance pending plea negotiations. *Id.* At a September 3, 2021 status conference, the Court placed the motion back on its docket after the parties represented that ongoing plea negotiations had stalled. [DE 75]. On October 8, 2021, the Court issued a bench decision, denying the portions of Prussick's motion addressed to the suppression of evidence and inspection of grand jury materials and reserving decision on Prussick's application to (I) dismiss Count III of the Indictment and (II) compel the Government to produce certain discovery.

## DISCUSSION

### I. Motion to Dismiss Count Three III of the Indictment

Count III of the Indictment charges a firearms offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). Prussick moves to dismiss the charge because "there is no evidence

proffered" in its support; he does not challenge the Indictment's facial validity.[2] *See* Def. Opening Memorandum at 9–16 ("Def. Mem.") [DE 59] . Prussick contends that a "full proffer of the government's evidence" demonstrates "there is nothing that establishes a nexus between the firearm" and the charges for narcotics conspiracy and narcotics possession with the intent to distribute count. *See* Def. Mem. at 9. The Government responds: "[A]t this time, there has been no 'full proffer' of the [G]overnment's evidence," and notwithstanding the incomplete proffer, "there is sufficient evidence available to support a conviction." Gov't Opposition Memorandum at 38 ("Gov't Opp.") [DE 61].

The Government must be given "an opportunity to 'make a detailed presentation of the entirety of the evidence before'" a district court may dismiss an indictment on evidentiary sufficiency grounds. *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021) (quoting *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018)). Accordingly, "[o]n a pretrial motion to dismiss an indictment, the Court accepts the allegations in the indictment as true and focuses on the legal sufficiency of the indictment itself, without ruling on the legal sufficiency of the evidence or contrary assertions of fact." *United States v. Rosado*, 2021 WL 2292856, at *1

---

[2] A facially valid indictment "track[s] the language of the statute charged and state[s] the time and place[s] (in approximate terms) of the alleged crime." *United States v. Ochoa*, 2019 WL 3239419, at *6 (S.D.N.Y. July 18, 2019) (internal quotation marks omitted); *see Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.").

(S.D.N.Y. June 4, 2021) (internal quotation marks omitted). There is an "extraordinarily narrow" exception: "the sufficiency of the [G]overnment's evidence on a" pretrial motion to dismiss an indictment may be tested where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." *Sampson*, 898 F.3d at 282 (discussing *United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998)).

The Court gleans what may constitute a "full proffer" by comparing precedent. In *United States v. Mennuti*, the Government "ma[de] a full proffer of the evidence" via a "detailed presentation of the entirety of the evidence that it would present to a jury." *Alfonso*, 143 F.3d at 777 (discussing *Mennuti*, 639 F.2d 107, 108–109 & n.1 (2d Cir. 1981). That "full proffer" is reflected in footnote 1 of the *Mennuti* Court's decision, which helpfully copied the U.S. Attorney's affidavit "stating the facts on which [the Government] would rely as showing defendants' alleged acts" sufficed to prove guilt. *Mennuti*, 639 F.2d at 108 n.1; *e.g.*, *United States v. Taylor*, 2003 WL 22073040, at *1–2 & n.10 (S.D.N.Y. Sept. 5, 2003) ("full proffer" made pursuant to a "stipulated record" consisting of the same evidence already submitted at a co-defendant's trial). In *United States v. Urso*, by contrast, the Government's earlier motion for pretrial detention reflected a "limited proffer" because it only "summarize[d], typically in a single sentence, the testimony that each of a string of cooperating witnesses [was] expected to give, and the physical evidence that the government expect[ed] to present to the jury." 369 F. Supp. 2d 254, 259–60 (E.D.N.Y. 2005); *e.g.*, *United States v. Yaron*, 2011 WL 3279054, at *2 n.4 (S.D.N.Y. July 28, 2011) (parties' oral argument on a

motion to dismiss an indictment did not "constitute a full proffer of the Government's evidence to be presented at trial"); *Rosado*, 2021 WL 2292856, at *2 (presentation of a "closed universe of evidence" was not a "full proffer").

While the Government "in some cases . . . may actually favor" a pretrial determination of the sufficiency of evidence, it does not here. *See Alfonso*, 143 F.3d at 777 n.7. The Government denies the notion that it made a full proffer. Gov't Opp. at 38. To hold, consistent with Prussick's assertion, that the Government's case "will not be proved by witness statements or coconspirator testimony" at trial requires an inference premature as this juncture. Def. Mem. at 15; *e.g.*, *Alfonso*, 143 F.3d at 776 (reversing dismissal of an indictment due to the district court looking "beyond the face of the indictment and [drawing] inferences as to the proof that would be introduced by the government at trial"); *United States v. Silver*, 117 F. Supp. 3d 461, 469 (S.D.N.Y. 2015) ("Silver's 'inferences as to the proof that would be introduced by the government at trial' are insufficient to merit dismissal of the count at this early stage . . . ."). It remains to be seen what evidence the Government will produce at trial in an effort to prove Count III and the Court cannot fairly say, based on the record as it now stands, that the Government has made a full proffer. *E.g.*, *United States v. Ochoa*, 2019 WL 3239419, at *6 (S.D.N.Y. July 18, 2019) (denying a motion to dismiss an indictment because "it is unclear whether the Government has proffered all of the evidence that it intends to produce at trial in support of count two"); *United States v. Law*, 2017 WL 1435746, at *1 (S.D.N.Y. Apr. 21, 2017) ("Nothing in the record, such as fully stipulated facts or a Government affidavit, suggests that the

Government has made a full proffer."). Prussick's motion to dismiss Count III of the Indictment based on the sufficiency of the evidence is denied.

## II. Discovery Demands

Prussick moves the Court to compel the Government to provide several items of discovery. He, however, fails to include "an affidavit certifying [his] counsel has conferred with counsel for the [Government] in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement." Loc. Crim. R. 16.1. Additionally, Prussick does not allege that the Government has improperly withheld information or evidence it is obliged to provide in discovery, and the Government acknowledges its continuing duty to disclose such materials. *See, e.g.*, *United States v. Bocio*, 103 F. Supp. 2d 531, 533–35 (N.D.N.Y. 2000). These two bases suffice to deny Prussick's motion to compel discovery. The Court nonetheless addresses Prussick's requests in the order he briefs them. Def. Mem. at 17–25.

Prussick first requests that "the alleged fentanyl be properly tested and broken down into its chemical composition and purity" to facilitate his determination as to whether an expert is necessary. Def. Mem. at 17. Under the Federal Rules of Criminal Procedure, the Government must disclose "the results or reports . . . of any scientific test or experiment" if, *inter alia*, they are currently in the Government's "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(F). The Government states the charges "merely require[] proof of a control substance or a mixture or substance 'containing' the specific controlled substance charged." Gov't Opp. at 48–49. That is,

the Government contends it is not required to determine the "purity"—viz. the prevalence of the substance's component materials—and no laboratory reports testing purity "exist at this time." Gov't Opp. at 48–49. Prussick further requests that the Court order the Government to presently undertake such testing, but he cites no legal authority in support. The Court denies Prussick's motion on this issue.

Prussick next moves to preclude the Government from cross-examining him as to his drug-related prior convictions, contending its prejudicial effect substantially outweighs its probative value. Def. Mem. at 17 (discussing Fed. R. Evid. 609). The Government admits an intention to cross-examine Prussick about two convictions—Falsely Reporting an Offense or Incident to Law Enforcement in the Third Degree and Possession of a Forged Instrument in the Third Degree, each more than ten years old—in order to impeach his credibility. Gov't Opp. at 49–55. The Government also intends only "to ask [Prussick] the statutory name of the offense, the date of the conviction, and that the conviction was for a misdemeanor offense." *Id.* (citing *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005)). In reply, Prussick proposes that the issue "is more appropriate for a motion in limine." Def. Reply Memorandum at 21 ("Def. Reply") [DE 68]. Accordingly, Prussick's motion on this issue is denied with leave to renew in a motion in limine.

Prussick calls for notice of evidence pursuant to Federal Rule of Evidence 404(b), adding that "[c]ourts in [the Second] Circuit generally require the [G]overnment to provided 404(b) notice to the defense at least two weeks prior to trial." Def. Mem. at 18 (citing *United States v. Vega*, 309 F. Supp. 2d 609, 617

(S.D.N.Y. 2004)). The Court has not yet set a trial date but the Government states it "will provide notice . . . at least three weeks before trial." Gov't Opp. at 55. The Court finds the Government's anticipated timing reasonable. *See* Fed. R. Evid. 404(b); *e.g.*, *United States v. Ogando*, 2009 WL 4927541, at *3 (S.D.N.Y. Dec. 16, 2009) ("Ten days has routinely been held in this Circuit to constitute sufficient notice under Rule 404(b)."). Prussick's motion is denied at the present time; he may renew it orally or in writing should the Government not adhere to its timeline.

Prussick asks for early disclosure, at most thirty days before trial, of the names of all witnesses to be called at trial and for the grand jury witness testimony. Def. Mem. at 19. He contends it "would help enable [him] to prepare his defense." *Id.* The Court may not compel the Government to identify its witnesses at this time absent "a specific showing that [it is] both material to the preparation of the defense and reasonable in light of the circumstances." *United States v. Bejasa*, 904 F.2d 137, 139-140 (2d Cir.1990) (internal quotation marks and alterations omitted); *United States v. Beeman*, 2003 WL 22047871, at *5 (S.D.N.Y. Aug. 29, 2003) ("[T]he Government is not obligated to disclose the identities of witnesses prior to trial unless the Defendant makes a showing that this knowledge is material to his defense."). Similarly, to obtain the grand jury witness testimony, Prussick must show that "a particularized need" exists and outweighs the policy of secrecy surrounding grand jury proceedings. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L.Ed.2d 1323 (1959). Prussick's showing is insufficient to compel the

Government to disclose such information at this time, and his motion on these issues is denied.

Next, Prussick moves the Court "to direct the [G]overnment to disclose" material under Federal Rules of Criminal Procedure 12 and 16 "if not already provided." Def. Mem. at 19. The Government asserts that it has complied thus far with its obligations pursuant to Rules 12 and 16, with plans to supplement certain already-made disclosures, and that it will continue to provide additional material as it comes in. Gov't Opp. at 59–60. "This Court has no reason to believe that the Government has not acted reasonably and in good faith to comply with" its Rules 12 and 16 "obligations[] and is satisfied with the Government's representations that it will continue to do so." *United States v. Ordaz-Gallardo*, 520 F. Supp. 2d 516, 518 (S.D.N.Y. 2007) (Rule 16); *United States v. Otibu*, 2002 WL 1033882, at *5 (S.D.N.Y. May 21, 2002) (Rule 12). This portion of Prussick's motion is denied.

Prussick also requests Jencks Act material. Def. Mem. at 19, 23. The Jencks Act empowers the Court to order such disclosure "[a]fter a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500(b); *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001) (holding a "district court exceed[s] its authority" in ordering early disclosure of Jencks Act material). The Government intends to produce Prussick's requested material "two weeks before trial," Gov't Opp. at 56, and its representation is "sufficient at this juncture," *United States v. Rodriguez-Perez*, 2012 WL 3578721, at *11 (S.D.N.Y. Aug. 16, 2012) (declining to

order early disclosure of Jencks Act material where the Government represented it would do so "one week before trial"). Prussick's motion to this end is denied.

Lastly, Prussick asks the Court to enter an order requiring the Government to comply with its obligations under *Brady*, *Giglio*, and their progeny. Def. Mem. at 21–25; *see Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). Prussick does not contend the Government has failed to do so up to this point. As with its other obligations, the Government maintains it has complied thus far and "will produce such material in a timely manner should any be [hereinafter] discovered." Gov't Opp. at 57–59. With regard to *Giglio* material specifically, the Government agrees to produce it "two weeks before trial." *Id.* The Court has no reason to believe otherwise, and Prussick's motion on this issue is therefore denied at this time. *E.g., United States v. Avenatti*, 2021 WL 4120539, at *6 (S.D.N.Y. Sept. 9, 2021) (citing cases); *United States v. Freeman*, 2019 WL 2590747, at *2 (S.D.N.Y. June 25, 2019).

## CONCLUSION

For the reasons discussed above, Prussick's motion as to issues unaddressed by this Court's bench decision on October 8, 2021 are denied.

**SO ORDERED.**

Dated: Central Islip, New York       s/ Denis R. Hurley
      October 21, 2021                Denis R. Hurley
                                                   United States District Judge