FILED
CLERK

10:07 am, Oct 11, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA

      -against-

CURTIS L. PRUSSICK,

                       Defendant.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CR-48

**APPEARANCES:**

**For the Government:**
Breon Peace
United States Attorney
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722
By:    Michael Maffei, AUSA

**For Defendant:**
Curtis L. Prussick, Pro Se
92269-053
MDC - Brooklyn
80 29th Street
Brooklyn, NY 11232

**AZRACK, District Judge:**

      The purpose of this Memorandum and Order is principally[1] to provide the Court's findings with respect to the hearings held on May 9, 2022, June 16, 2022, and July 12, 2022 as ordered by the Court in its January 26, 2022 bench decision on the November 17, 2021 pro se motion by defendant Curtis Prussick ("Prussick" or "Defendant").

---

[1] This Memorandum will also address the motions filed by Prussick on June 21, 2022 and June 29, 2022.

## BACKGROUND

### I.  Defendant's November 21, 2021 Motion

On November 17, 2021, Defendant filed a pro se motion seeking (1) a court order requiring the government to stand by or re-issue a plea offer that had been extended to him through his then-attorney Anthony LaPinta, on June 23, 2020; or in the alternative (2) a hearing on his complaint that targeted the legal assistance provided by his subsequent attorney, Joseph Ferrante, insofar as it affected defendant's Sixth Amendment rights.

### II.  Decision Setting Hearing Parameters

On January 26, 2022, the Court issued a bench decision with respect to that November 17 application. With respect to the request for an order directing the government to re-issue its plea offer, the Court found the information furnished by Defendant was insufficient to warrant such a measure. (1/26/2022 Tr. at 4.) Therefore, the Court focused on the alternative relief, which was premised on his position that Joseph Ferrante provided him with ineffective assistance of counsel.

The Court granted a hearing for the stated purpose of determining: (1) defendant's COVID-19 status in January 2021 and whether it had some effect on his reasoning ability in the early months of 2021 and (2) the issue of effective assistance of counsel by Ferrante vis-a-vis the June plea offer; more particularly Defendant's claim that he was not told that the plea offer would be withdrawn should he file pretrial motions. (*Id.* at 21.)

With those parameters in mind, the Court now proceeds to the relevant background.

## III.    PROCEDURAL AND FACTUAL BACKGROUND[2]

On February 4, 2020, a grand jury returned an indictment charging Prussick and his co-defendant, Amber Schatz ("Schatz"), with one count of conspiracy to distribute and possess with intent to distribute controlled substances (cocaine base, fentanyl and cocaine) in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(iii), 841(b)(1)(B)(vi) and 841(b)(1)(C), possession with intent to distribute controlled substances (cocaine base, fentanyl and cocaine), in violation 21 U.S.C. §§ 841(a), 841(b)(1)(B)(iii), 841(b)(1)(B)(vi) and 841(b)(1)(C), and unlawful use of a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i).   *See* ECF Doc. No. 1. Prussick was represented at his arraignment and for about three months thereafter by retained counsel Joseph Cozzo, Esq. During this time, Defendant requested a proffer meeting and in connection therewith executed a Proffer Agreement. Under the terms of that agreement, the E.D.N.Y. U.S. Attorney's office was permitted to use any statements made by Prussick "as substantive evidence to rebut directly or indirectly, any evidence or elicited or factual assertion made by or on behalf of Prussick at any stage of a criminal prosecution . . . ."

In or about May 2020, Prussick fired Cozzo and then filed a disciplinary complaint against him with the State of New York Grievance Committee, 10th District. *See* DE 87 at pp. 8-12.  On or about May 4, 2020, Prussick retained Anthony M. La Pinta, as counsel.

---

[2]  The background information is taken from the docket and transcripts in this matter, and the exhibits submitted both in connection with Defendant's November 17, 2021 motion and at the hearings held on that motion.

On or about June 23, 2020, the government sent a written plea offer (the "Plea Offer") to LaPinta.  It is the Plea Offer that is central to the instant motion.  The Plea Offer allowed Prussick to plead guilty to Count One and Count Three of the Indictment, each of which carry a mandatory minimum of five years.  In exchange, the government would agree to not seek an upward departure from the Sentencing Guidelines range, which was ten years.  The government also agreed not to pursue additional charges, which would provide Defendant "coverage" for: "(a) in our about January 2020, conspiring to distribute and the distribution of controlled substances, including cocaine, cocaine base, heroin and fentanyl; (b) on or about January 23, 2020, possessing with the intent to distribute cocaine, cocaine base, heroin, fentanyl and oxycodone; and (c) on or about January 23, 2020, unlawfully possessing one Palmetto State Armory, model PG9, 9 millimeter semi-automatic rifle and ammunition in furtherance of drug trafficking crimes." *See* Gov't. Hrg. Ex. 3 at ¶ 5.

Accompanying the Plea Offer was a letter which provided that "this plea offer expires after September 14, 2020, and may be revoked by the government, in its sole discretion, at any time before its expiration." *Id.* at 1. The Plea Offer and cover letter were sent by email.  Def. Ex. C5.  In that email, the government stated that given the current state of affairs (apparently referencing the COVID-19 pandemic) the acceptance date of September 14 was "flexible."  The email went on to state:

> More importantly, the investigation has developed sufficient evidence to charge Prussick with an expanded drug conspiracy, including a ten year man min weight as well as several individual sales that led to overdose deaths. Before running back in the GJ, I would be open to discussing coverage for those items as part of the proposed plea agreement. A precondition to the coverage would be that Prussick proffers again and

truthfully admits to the conduct that he will be given, or is seeking, coverage for. Once you've had a chance to discuss with your client, give me a call and we can talk.

*Id*. The government then sent another email stating: "I MISTYPED IN MY LAST EMAIL. IT SHOULD HAVE READ MULTIPLE NON-FATAL OVEREDOSES, not overdose deaths. Sorry. There are tons of non-fatals we can tie him to. Have not yet been able to conclusively tie him to a fatal, yet." Gov't Hrg. Ex. 6 (emphasis in original).

At a status conference held on November 4, 2020, Prussick indicated he wanted to fire LaPinta. Several week later, in a letter to the then-presiding judge, Prussick accused LaPinta of ineffective assistance of counsel and claimed that LaPinta was "was trying to force [him] into a plea . . . ." *See* Gov't Hrg. Ex. 9. On December 9, 2020, Joseph Ferrante was appointed counsel for Prussick.

In a hand-written note to Ferrante dated December 20, 2020, Prussick set forth "a little part of the motion [he] drafted up." He described why he believes certain of the evidence cannot be used against him and directed Ferrante to file a motion to dismiss the 924(c) count.  Among other things, Prussick wrote "To be honest with you I got nothing to lose. These people kept saying will supersede me. . . . Like I said with LaPinta, I sent him by email everybody I sold drugs too, and information on Fatal overdose's, That I did not do, I just know about. . . . My girl is ready to plead, Because she just wants a release date and all the threats of superseding. I will take this to the

max, . . . . But if the plea is good I'll plea. . . . 10 years to me is no different than 15 years." Gov't Hrg. Ex. 10.[3]

On December 21, 2020, Prussick tested positive for Covid-19. DE 87 at 38.

On January 25, 2021, a telephone status conference was held before the then-assigned District Judge. Prussick, Mr. Ferrante, and AUSA Maffei were on the line. In response to the Court's inquiry as to the status of this matter, AUSA Maffei advised the Court that he had briefly discussed the Plea Offer with Mr. Ferrante, and that Ferrante asked Maffei for an opportunity to review it and discuss it with Prussick as well as for an extension of the acceptance date.  Maffei further advised the Court that he had told Ferrante that if there came a time when Defendant chose to file motions, the Plea Offer would be revoked. In response, Ferrante stated that the Plea Offer "does not look like it's going to meet with my client's approval," but that Prussick understands that the Plea Offer would remain open to the date that motions are filed. Ferrante asked for a motion schedule for "a month, month-and-a-half- out" to prepare the motion and said he would let the Court know if "anything changes" but that "[f]or now we're preparing and drafting motions . . . ."  A motion schedule was then set. Jan. 25, 2021 Tr. at 3-8.

By letter dated January 26, 2021,[4] Prussick wrote to Ferrante, setting forth case law he found for the proposed motion and asking for "the search warrant

---

[3] In quoting various emails and letters written by Prussick, the Court does so without correcting any spelling, grammatical or other errors.

[4] Although dated 2020, it is apparent that should have been dated 2021 as Ferrante was not involved in the case in 2020.

inventory itemized list and surveillance logs on 42 lewin" that he needed for the motion. Further, he wrote "this case has so many holes in it, To be honest with you I'm in for the all . . . .The only way they keeping me if Judge Feuerstein hits the gavel down guilty. But the plea is right we can talk. I believe my 4th amendment was violated, If I got to take this all the way to the Supreme court, I will . . . . Please look at these cases and you will see what I am talking about. . . ." Gov't Hrg. Ex. 11.

Between February 11, 2021, and March 2, 2021, Prussick sent more than a half dozen emails to his co-defendant, Schatz, urging her not to accept the Plea Offer and urging her to wait until his motion is filed. For example, in a March 1, 2021 email he wrote:

> mama my stomach is sick to think you are going to plea,, my lawyer found out what the ausa is saying ,, and none of it is tru,, they making things up he said to make us plea,,, you know with 924c you cant get the first step act right,, serve 8 years 8 months and 22 days almost 9 years,, please be smart,, tell your lawyer you need more time,, wait till my motion is filed,,were trying to dismiss the 924c,, be smart,, stand up for yourself,, I would not try and talk you out of it if the charges are fake

Gov't Hrg. Ex. 12-2.  Two days later, he wrote in an email to Schatz that "there also problems with the cell phone searches where waiting for the ausa to get back to him,,,, every thing will be in the motion, I should getr copie maybe on the 10 and ill make copie and sent it to you,, it's a omnibus motion, very big, lol,,after this I believe a new plea will be offered[.]" Gov't Hrg. Ex. 12-5. In yet another email that same day, he wrote "mama i stand behind you to plea,,but least wait till,you read my lawyers motion,,if you dont like motion,,tell your lawyer you need another month ,,be smart baby,,the neighbor bugged on mom,,talking about you and me,,remember her sister

a cop,,and her friend is the cop,,who locked us up crazy,,ill never plea to these charges

im innocent,,love you." Gov't Hrg. Ex. 12-4.

By email dated March 18, 2021, and sent after the normal close of business,

Prussick wrote the following to Ferrante:

> i remember our legal call prior to the january 25, 2020 court call,, you
> told me the ausa said my plea agreement is still on the table because of
> covid 19 pandemic, then on the court conference call, the ausa stated to
> judge feuerstein that he spoke with you regarding the plea agreement,
> and the plea agreement still stands as long as we dont file pre trial, but
> I have review the plea agreement an no where in it does it state I can't
> file pre trial motions, that would breach my plea,,us vs pollack 91 f3d
> 331 335 (2 cir 1996) had the government wished to preclude plaintiff
> from filing a 2255 motion,, it should have added that limitation
> expressly to the langugage of the plea agreement,, it did not do so under
> pollack,, as stated on january 25, 2020 on the phone court conference . .
> . we both heard the ausa tell judge feuerstein my plea was still active,,
> I wanted to file these motion then plea out if necessary  . . . .

Def.'s Ex. A. The next morning, Ferrante replied that the motion was filed, "[w] are

in it now" and to "[s]tay positive." *Id.*

Defendant's omnibus motion was filed on March 19, 2021. DE No. 59. The

government's opposition was filed on April 15, 2021 and the motion was fully briefed

on May 28, 2021 when Defendant's reply was filed. *See* DE Nos. 61 and 68

By letter dated June 16, 2021, Prussick, by his counsel and with the consent of

the government, requested that the omnibus motion be held in abeyance "so that we

can continue plea negotiations." DE No. 69. That request was granted and the motion

remained in abeyance until it was ordered placed back on the docket on September

3, 2021. DE 73.

After the omnibus motion was filed, the government was no longer offering the 10 year sentence of the Plea Offer.  Rather, the government was now offering a plea with an 18-year term of imprisonment. *See, e.g*,, DE 87 at p. 31 (8/30/2021 emails between Ferrante and Prussick); DE no. 99 at p. 11; *see also* DE no. 87 at 13 (Def. Ex.D1, Nov. 3, 2021 email Prussick to Ferrante) ("right now it is up to the government if they want to resolve this short of trial with 17 year capped plea,'not stipulated', . . . look mr ferrante in trying to resolve this, you don't hear me asking for a conditional plea reserving my rights to the motion, the only changing in the governments offer is one word changed "stipulated" to "capped").

By Orders dated October 8, 2021 and October 21, 2021, Defendant's omnibus motion was denied in toto. *See* DE no. 78 and 79.

A status conference was held on November 10, 2021 at which time Maffei provided the Court with the following update on the status of the case:

> Since we last had a conference before the Court, I had indicated on the last date and to Mr. Ferrante that [we] would be seeking a superseding indictment. There was a grand jury time scheduled two Tuesdays ago. We discussed that grand jury presentation in an attempt to resolve the matter short of a superseding indictment. I discussed the matter with Mr. Ferrante. I had rescheduled it for yesterday for grand jury. Unfortunately, I was unable to go into the grand jury despite the breakdown in plea negotiations . . . . I'm rescheduling the grand jury proceeding for next Tuesday.

Nov. 10, 2021 Tr. at 3-4. With respect to the superseding indictment, Maffei advised the Court that "I do anticipate - - I've discussed this with Mr. Ferrante at length - - some of the charges in the superseding indictment are going to be different from the

charges in the original indictment. And they include – again, if it's returned as anticipated - - very serious charges related to an overdose death  . . . ." *Id.* at 9.

On or about November 17, 2021, a grand jury sitting in the Eastern District of New York returned a superseding indictment, charging Prussick with

- conspiring to distribute controlled substances (heroin, cocaine base, fentanyl, cocaine and oxycodone), in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(1), 841(b)(1)(A)(vi), 841(b)(1)(B)(iii) and 841(b)(1)(C);

- distribution of controlled substance causing the death of Kyle Price, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C);

- distribution and possession with the intent to distribute controlled substances (fentanyl and cocaine), in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C);

- possession with intent to distribute controlled substances (cocaine base, fentanyl and cocaine), in violation 21 U.S.C. §§ 841(a), 841(b)(1)(B)(iii), 841(b)(1)(B)(vi) and 841(b)(1)(C);

- unlawful use of a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and

- being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

*See* ECF Doc. No. 84 (the "Superseding Indictment").

That same day, a Court conference was held during which Prussick asked that Ferrante be relieved and new counsel be appointed. That request was granted and Kevin Keating Esq. was appointed to represent him. ECF Doc. Nos. 85 and 86. Nonetheless, Prussick was permitted to file his November 17, 2021 motion pro se and to subsequently represent himself at the hearing on that motion, with Mr. Keating acting as stand-by counsel. On November 22, 2021, Defendant was arraigned on the Superseding Indictment, with new counsel, Kevin Keating, Esq. ECF Doc. No. 90.

As noted earlier, on January 26, 2022, the Court issued a bench decision with respect to Defendant's November 17 application and granted a hearing for the stated purpose of determining (1) defendant's COVID-19 status in January 2021 and whether it had some effect on his reasoning ability in the early months of 2021 and (2) the issue of effective assistance of counsel by Ferrante vis-a-vis the June plea offer. Defendant maintains that Ferrante was ineffective because he did not tell Defendant that the plea offer would be withdrawn should he file pretrial motions. (*Id.* at 21.)

Hearings were held on May 4, 2022 and June 16, 2022 before Judge Hurley. Judge Hurley was unable to complete the hearings before taking inactive status and the matter was reassigned to the undersigned. An additional day of testimony was then taken on July 12, 2022, at which time the Court reheard all of Defendant's testimony.[5]

## IV.   Hearing Testimony

Three witnesses testified at the hearings: Ferrante, AUSA Maffei, and Prussick.

### A.   Testimony of Joseph Ferrante

During the course of his testimony, Ferrante testified how he repeatedly counseled Prussick to  accept the Plea Offer and how Prussick was not amenable to that plea. According to Ferrante, the day after the January 25, 2021, conference he spoke with Prussick and again explained the consequences of  filing the motion.

---

[5] Although the Court did not hear the testimony of either Ferrante and Maffei, this matter can be decided solely on the testimony of Prussick and the documentary evidence.

Ferrante testified that he had numerous conversations with Prussick regarding the consequences of filing the motion and the risks of the government bringing additional charges. He also described how he sought to convince the government to give Prussick a more favorable deal than the ten year sentence in the Plea Offer. According to Ferrante, although he was aware that Prussick tested positive for COVID-19, Prussick never displayed any difficulty understanding what was going on or what they were discussing.

### B.    Testimony of AUSA Maffei

Prussick's request to call AUSA Maffei as a witness based on factual assertions made by Maffei during the hearing was granted "with great hesitation" and because the Court believed "it would be helpful."

During his testimony Maffei explained that Defendant was never offered coverage for any overdoses in discussions prior to the filing of the omnibus motion on March 19, 2021.  He also clarified which discussions took place before the filing of the omnibus motion and which discussions took place thereafter.

### C.    Prussick's Testimony

According to Prussick, his ability to understand matters during the January 25, 2020 conference and thereafter leading up to the filing of the omnibus motion was impaired by a multitude of factors: he suffered from COVID-19 fog, he was on various medications, he was smoking K-2 while in jail, he was a special education student in school, and the phone in the MDC was not working.

With respect to his ineffective assistance of counsel claim, Prussick testified that Ferrante: (1) never told him the Plea Offer would be revoked if any pretrial

motion was filed; (2) never explained the strength of the government's case; (3) never reviewed the Plea Offer with him; (4) never took him to a reverse proffer before the motion was filed; (5) never told him that if the motion was filed the government could use his proffer statements against him; (6) never explained to him that, if the plea was rejected and a superseding indictment was filed, the mandatory minimum he faced would increase from 10 years to twenty five.

## DISCUSSION

### I.    Relevant Standard

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must establish (1) that his counsel performed deficiently, and (2) that the deficiency caused actual prejudice.  *Id.* at 687.  *See also Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong, "we ask whether counsel's performance was so deficient that, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal quotation marks omitted); *accord Harrington v. Richter*,   562 U.S. 86, 105 (2011) ("[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.") (internal quotation marks omitted).  A court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.  To satisfy the prejudice prong, a petitioner must show that but for the attorney's

deficient performance, there is a reasonable probability that the result would have been different. *Id.* at 694. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham*, 313 F.3d at 730. Here, the resulting prejudice must amount to a showing that, but for Ferrante's ineffective assistance, Prussick would have accepted the Plea Offer. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because "'[i]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that the federal district courts need not address both components if a petitioner fails to establish either one. The relevant excerpt from that decision reads:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness

> claim is not to grade counsel's performance.  If it is easier to dispose of
> an ineffectiveness claim on the ground of lack of sufficient prejudice,
> which we expect will often be so, that course should be followed.

466 U.S. at 697.

The two *Strickland* requirements are conjunctively stated, meaning that the

failure to establish either is fatal.  The burden of proof is on the defendant. *Strickland*,

466 U.S. at 687.

## II.   Prussick has Failed to Establish He was Impaired by COVID-19

At the end of December 2020, Prussick tested positive for Covid-19. Other than

his own testimony, Prussick presented nothing to support his claim that Covid-19

affected his reasoning ability in the early months of 2021. Indeed, the documentary

evidence presented does not support this claim.

For example, the day after the January 25, 2021 court conference, Prussick

wrote to Ferrante sending him case law for the proposed motion and requesting the

search warrant inventory itemized list.  The letter demonstrates Prussick's lucidity.

Similarly, Prussick's March 18, 2021 email—which shows that weeks after the

conference he was able to recall his legal call with Ferrante immediately before the

January 25, 2021 conference and that court conference call itself, (Def. Ex. A10[6])—

contradicts his claim.

Having considered all the evidence as a whole, the Court concludes that

Prussick has failed to prove that Covid-19 (or anything else) affected his reasoning

---

[6] Def. Ex. A10 was also marked  and admitted as Def. Hrg. Ex. A.

ability in the early months of 2021.[7]  Relatedly, there is also no credible evidence that Prussick's statements or actions indicated to Ferrante that Prussick's ability to reason was affected by COVID-19 or anything else during this time. This assumes, of course, that Ferrante's knowledge of such would give rise to a viable claim of ineffective assistance of counsel.

### III.    The Ineffective Assistance of Counsel Claim Fails

The Court rejects Defendant's contention that he received ineffective assistance of counsel because Ferrante did not explain to him that the plea offer would be revoked if he filed the pre-trial motions.    Prussick's testimony on this issue was not credible.  First, Prussick was on the line for the January 25, 2021 conference call during which the government made clear its position that the filing of pre-trial motions would cause the Plea Offer to be revoked. Second, his March 18, 2021 email to Ferrante, Def. Ex. A10, further demonstrates his awareness of the government's position. In fact, in his July 12 testimony, Prussick admitted that "Ferrante told me March 19th, 2021 was the deadline for the plea." 7/12/22 Tr. at 416.  March 19, 2021 was the adjusted date for the filing of Defendant's motion, *see* ECF Doc. No. 57.

---

[7]  During the course on the hearing on the motion, Prussick attempted to expand his impaired reasoning claim to include that he was a special education student, was smoking drugs, suffered from mental health issues, and took various mental health medicines. The Court rejects these later raised issues. First, as to smoking drugs on the day of the January 25 conference, his ability to recall  that conference nearly two months later contradicts this claim. Moreover, despite his "special education status and mental health, Prussick has demonstrated an ability to conduct legal research – to the extent that Judge Hurley—who was previously assigned to this case—noted the on point and helpful case law cited by Prussick on the instant motion.

Prussick's claims of additional alleged failings by Ferrante are outside of the scope of the hearing parameters established by the Court's January 2022 decision. But even if the Court considers these allegations (which were not raised in Defendant's moving papers) and assumes that such allegations, if credible, could support an ineffective assistance of counsel claim, the only evidence to support these claims is defendant's self-serving testimony which the Court finds is not credible. During his cross-examination, Prussick was evasive. Additionally, his testimony that he did not know whether it was illegal to have drugs while in jail, as well as other aspects of his testimony, were simply unbelievable.  On cross-examination, his lack of credibility was demonstrated. *See* 7/12/22 Tr. at 492-99. Finally, documentary evidence supports the conclusion that Ferrante discussed the plea with Prussick. *See, e.g.,* Def. Ex. A; Gov't Hrg. Ex. 8; Gov't Hrg. Ex. 10.

Even if the performance prong of the *Strickland* test had been demonstrated, the lack of prejudice requires denial of this claim.

The record is replete with evidence that Defendant was unwilling to accept the ten-year plea deal at any time before the filing of his pretrial motions.  On August 21, 2020 Prussick wrote to LaPinta that he was working on a motion regarding the "illegal cell phone search and that he "will never plea out to a violation of [his] 4th amendment violation illegal arrest and seizure and 4th amendment search of [his] cell phone. "  Gov't Hrg. Ex. 4. He wrote to Judge Feuerstein in November 2020 that LaPinta was "was trying to force him into a plea." Gov't Hrg. Ex. 9. In his December 20, 2020 note to Ferrante, Prussick wrote "I will take this to the max, . . . . But if the

plea is good I'll plea. . . .10 years to me is no different than 15 years," Gov't Hrg. Ex. 10; *see* also Gov't Hrg. Ex. 11. In emails to his co-defendant, he repeatedly urged her not to plead and accept a ten-year sentence until she saw what was in omnibus motion.  In these emails, he also maintained his innocence. The Court finds that Prussick was determined to proceed with the filing of his pretrial motion and knew that this would result in the revocation of the Plea Offer.  His testimony to the contrary was not credible.   Other than Prussick's self-serving and incredible statements there is no evidence that Prussick had any intention of accepting the Plea Offer before it was revoked. His own writings confirm that he rejected the Plea Offer when presented to him by LaPinta and again when presented by Ferrante.  When he rejected the Plea Offer he knew that the government was investigating overdoses, Gov't Hr. Ex. 10, and was aware of the government's position that the filing of the pretrial motions would revoke the Plea Offer.  Prussick's own exhibit demonstrates that he was determined to roll the dice with his pretrial motion with the expectation that it would result in a better deal. *See* Def. Ex. A.[8]  Prussick has failed to present any credible evidence that but for Ferrante's alleged errors he would have effected a timely acceptance of the Plea Offer.

---

[8] Indeed, it appears that was not until *after* the government advised the defense that it had sufficient evidence to proceed to seek a superseding indictment, Def. Ex. C1, that Prussick claimed that he was unaware that the filing of the motion would result in his "plea [being] withdrawn," Def. Ex. A4. However, as pointed out earlier, his March 18,  2021 email to Ferrante, Def. Ex. A10, demonstrates the falseness of this claim.

For the reasons set forth above, Prussick's claim of ineffective assistance of counsel is rejected.

## IV.   Other Matters Raised in Defendant's Filings.

In motions filed on June 21, 2022 and June 29, 2022, Defendant raises a host of other issues, to which the Court now turns.

Defendant's request that the indictment be dismissed due to Fourteenth Amendment violations and prosecutorial misconduct is denied. Defendant's claims of prosecutorial misconduct based on the failure to redact certain portions of his proffer statement are not born out by the docket. Further, to the extent his assertion of a Fourteenth Amendment violation is based on the notion that the government is "obligated" to offer him a plea, no such obligation exists. *See Lafler v.* Cooper, 566 U.S. 156,168 (2012) ("It is, of course, true that defendants have no right to be offered a plea . . . nor a federal right that the judge accept it.') (internal quotation marks and citation omitted).  Prussick also claims that he tried to plead guilty to all of the counts in the original indictment, at court conferences held on November 10 and 17, 2021 (just prior to the superseding indictment being presented).  These claims, however, are not supported by the transcripts for these conferences. Lastly, with respect to AUSA Maffei's alleged misconduct by making himself a witness, it was Prussick's attempted expansion of the scope of the hearing on his ineffective assistance claim that opened the door to that testimony. In any event, Maffei having testified at a pretrial hearing does not support a claim of prosecutorial misconduct or amount to a

violation his Prussick's due process rights. *See Pruitt v. Kirkpatrick*, 2017 WL 4712225 (S.D.N.Y. Oct. 18, 2017).

Defendant asserts a Sixth Amendment violation claiming that Ferrante was only appointed "stand-by" counsel and had no authority to file the omnibus motion on his behalf.[9]  First, even assuming that this were the case,[10] this claim should have been raised earlier. It was not raised at the January 2021 conference before Judge Feuerstein. Nor was it raised in Prussick's moving papers. Moreover, the emails between Prussick and Ferrante prior to the filing of the omnibus motion to dismiss give no indication that Prussick believed Ferrante was just stand-by counsel with no authority to file that motion or that Prussick was dissatisfied with the contents of the motion. Having failed to assert this claim in a timely fashion, Prussick has waived any objection to Ferrante having acted as his attorney, rather than stand-by counsel.

Moreover, even assuming, for the sake of argument, that Ferrante was, in fact, only stand-by counsel, Prussick does not have a viable claim.  Whether Ferrante was

---

[9]  The Court notes parenthetically that this claim seems antithetical to Prussick's claims  that Ferrante provided ineffective assistance of counsel. As the Second Circuit has held, "a defendant has no Sixth Amendment right to standby counsel after he knowingly and voluntarily waives his right to an attorney," and "absent [that right], a defendant generally cannot prove standby counsel was ineffective." *United States v. Archambault*, 740 F. App'x 195, 199 (2d Cir. June 29, 2018) (cleaned up) (quoting binding precedential rulings in *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998) and *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)). *See also United States v. Van Hoesen,* 636 F. Supp. 2d 155 (N.D.N.Y. 2009) (defendant who elected to proceed pro se at trial has no claim of ineffective assistance against standby counsel).

[10] Although it is unclear whether Ferrante was appointed by the court as counsel rather than stand-by counsel, *see* 12/9/2020 Tr. at 2, Ferrante appeared as counsel – not stand-by counsel – at the January  25, 2021 conference without correction by the court (or objection by Prussick).

Prussick's regular counsel or was just his stand-by counsel, the government would still have no obligation to provide Prussick with another opportunity to accept the Plea Offer after the filing of the motion.  Furthermore, Prussick cannot show that he was prejudiced in any fashion because the evidence shows that Prussick wanted the motion to be filed and did not express any dissatisfaction with its contents prior to its filing. The evidence is clear that Prussick would have pursued the motion even if Ferrante was only stand-by counsel.

Defendant's request to have his case moved to Brooklyn because he gets car sick during the trip from Brooklyn, where he is incarcerated, to the Long Island courthouse is denied. To the extent he suffers from motion sickness, he can request appropriate medication to deal with that issue.

The motion for experts is denied as not properly supported by the information required for such requests by the Eastern District's CJA Plan.  So too, the request for a laptop so that Defendant has "privacy" in viewing discovery is denied given the lack of  supporting information.[11]

Finally, in his motions Defendant requests copies of the transcripts of the November 10, 2021 status conference and the June 16, 2022 hearing as well as certain discovery from the government. The Court has been advised that the June 16, 2022 transcript has been provided to Prussick[12] and therefore the request is denied as

---

[11] It is also denied as untimely as Judge Hurley, in denying an earlier request, gave Prussick until May 30 to renew the request for a laptop.

[12] The Court notes that Prussick's post-hearing submission does not claim otherwise.

moot. To the extent Prussick has not yet received the November 20, 2021 transcript, stand-by counsel should assist him in procuring a copy from the appropriate court reporter. With respect to the requested discovery, within two weeks of the date hereof, the government shall serve and file a list of all discovery provided to the defense thus far.  Defendant will then have two weeks to serve and file a letter detailing what, if any, additional discovery he seeks. Any disputes as whether Defendant is entitled to the additional discovery he seeks should be brought to the attention of the Court.

## CONCLUSION

For the reasons set forth above, the Court rejects Defendant's claims of ineffective assistance of counsel and his claims that COVID-19 affected his reasoning ability in the early months of 2021.  Further, the motions of June 21 and 29 are denied except as specified above with respect to the November 10, 2021 transcript and discovery sought by Defendant.

**SO ORDERED.**

Dated: Central Islip, New York       _s/ Joan M. Azrack_
      October 11, 2022       United States District Judge